UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

EDDIE ROJAS,                          )
                                      )      No. CV-11-0096-JPH
          Plaintiff,                  )
                                      )      ORDER GRANTING DEFENDANT'S
                                      )      MOTION FOR SUMMARY JUDGMENT
          v.                          )
                                      )
MICHAEL J. ASTRUE, Commissioner       )
of Social Security,                   )
                                      )
          Defendant.                  )
_____ )

     **BEFORE THE COURT** are cross-motions for summary judgment noted
for hearing without oral argument on July 27, 2012.  (ECF No. 13,
16).  Attorney Cory J. Brandt represents plaintiff; Special
Assistant United States Attorney Gerald J. Hill represents the
Commissioner of Social Security (defendant).  The parties have
consented to proceed before a magistrate judge.  (ECF No. 7).
After reviewing the administrative record and the briefs filed by
the parties, the court **grants** defendant's Motion for Summary
Judgment

                         **JURISDICTION**

     Plaintiff filed applications for a period of disability,
disability insurance benefits (DIB), and supplemental security
income (SSI) on December 11, 2006, alleging disability as of
February 10, 2003 (Tr. 16).  The applications were denied
initially and on reconsideration.

     Administrative Law Judge (ALJ) Gene Duncan held a video
hearing on September 18, 2009, with plaintiff appearing in

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

Wenatchee, Washington (Tr. 39-83).  The ALJ issued an unfavorable decision on October 9, 2009 (Tr. 16-33).  The Appeals Council denied review on January 6, 2011 (Tr. 1-5).  The ALJ's October 2009 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on March 7, 2011 (ECF No. 1, 4).

### STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on March 16, 1963 (Tr. 120) and was 39 years old at the time of the alleged onset date.  Plaintiff has obtained a GED (Tr. 43) and has past work as a convenient store cashier, forklift operator and general laborer (Tr. 74-75). Plaintiff alleged he was unable to work because of lumbar/thoracic strain and spasm; left foot ganglion cyst removal; bilateral lower extremity radiculopathy; adjustment disorder with depression; antisocial personality disorder; bilateral foot pain, left more severe than right; low back pain; and bilateral hand pain and weakness (Tr. 150).

At the administrative hearing, Plaintiff testified he has been sober for about five or six years following treatment, but did relapse on alcohol on one occasion about three years prior to the hearing (Tr. 44-45).  He stated he was last incarcerated about six months prior to the hearing for a driving offense (Tr. 45). Plaintiff reported he has been to jail at least 40 or 50 times for domestic violence, DUIs, thefts, shoplifting, not paying fines and

1  driving offenses (Tr. 200).  He also served one prison sentence of
2  15 months on a 1993 molestation charge and is currently required
3  to register as a sex offender (Tr. 200).

4                  **SEQUENTIAL EVALUATION PROCESS**

5       The Social Security Act (the Act) defines disability as the
6  "inability to engage in any substantial gainful activity by reason
7  of any medically determinable physical or mental impairment which
8  can be expected to result in death or which has lasted or can be
9  expected to last for a continuous period of not less than twelve
10 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also
11 provides that a plaintiff shall be determined to be under a
12 disability only if any impairments are of such severity that a
13 plaintiff is not only unable to do previous work but cannot,
14 considering plaintiff's age, education and work experiences,
15 engage in any other substantial gainful work which exists in the
16 national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
17 Thus, the definition of disability consists of both medical and
18 vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156
19 (9th Cir. 2001).

20      The Commissioner has established a five-step sequential
21 evaluation process for determining whether a person is disabled.
22 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person
23 is engaged in substantial gainful activities.  If so, benefits are
24 denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If
25 not, the decision maker proceeds to step two, which determines
26 whether plaintiff has a medically severe impairment or combination
27 of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii),
28 416.920(a)(4)(ii).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden

1  then shifts, at step five, to the Commissioner to show that (1)

2  plaintiff can perform other substantial gainful activity and (2) a

3  "significant number of jobs exist in the national economy" which

4  plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th

5  Cir. 1984).

6                          **STANDARD OF REVIEW**

7       Congress has provided a limited scope of judicial review of a

8  Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold

9  the Commissioner's decision, made through an ALJ, when the

10 determination is not based on legal error and is supported by

11 substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995

12 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.

13 1999). "The [Commissioner's] determination that a plaintiff is

14 not disabled will be upheld if the findings of fact are supported

15 by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572

16 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence

17 is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d

18 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.

19 *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);

20 *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d

21 573, 576 (9th Cir. 1988). Substantial evidence "means such

22 evidence as a reasonable mind might accept as adequate to support

23 a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

24 (citations omitted). "[S]uch inferences and conclusions as the

25 [Commissioner] may reasonably draw from the evidence" will also be

26 upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).

27 On review, the Court considers the record as a whole, not just the

28 evidence supporting the decision of the Commissioner. *Weetman v.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

*Sullivan,* 877 F.2d 20, 22 (9ᵗʰ Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9ᵗʰ Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9ᵗʰ Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9ᵗʰ Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9ᵗʰ Cir. 1987).

**ALJ'S FINDINGS**

The ALJ determined that plaintiff meets the insured status requirements of the Act through December 31, 2006 (Tr. 18).  At step one, the ALJ found plaintiff has not engaged in substantial gainful activity since February 10, 2003, the alleged onset date (Tr. 18).  At step two, the ALJ found plaintiff had severe impairments of "depression; personality disorder, antisocial traits; and alcohol and cocaine abuse, in remission" (Tr. 18).  The ALJ extensively evaluated the medical evidence of record (Tr. 18-25) and specifically concluded that there was no objective medical findings to support plaintiff's allegations of severe low

back pain, wrist and hand pain, degenerative disc disease, carpal tunnel syndrome or any rheumatological impairment (Tr. 23). The ALJ also held that while plaintiff had complaints of foot pain and did undergo surgery for the alleged impairment, it is offset by the fact that the record reflects that the surgery was generally successful in relieving symptoms and there was no continuous 12-month period where this impairment would have prevented plaintiff from performing substantial gainful work activity (Tr. 25). The ALJ thus determined that plaintiff's left foot neuroma was also a non-severe impairment (Tr. 25-26).

At step three, the ALJ found plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Tr. 26). The ALJ then assessed plaintiff's RFC (Tr. 28). The ALJ determined plaintiff could perform light work, except he should avoid heights, dangerous machinery, working around children and disadvantaged adults, security type work or being involved in the safety of others, having intense interaction with others and coworkers and having direct access to drugs or alcohol (Tr. 28). The ALJ further determined that plaintiff is capable of occasional supervisory contact and must receive clear expectations and structure from supervisors and should work independently (Tr. 28).

With respect to plaintiff's credibility,[1] the ALJ stated that plaintiff's medically determinable impairments could reasonably be

---

[1]Plaintiff does not contest the ALJ's credibility finding and does not discuss any of the ALJ's reasons for this finding. (ECF No. 14). Plaintiff has thus waived any challenge to the ALJ's evaluation of Plaintiff's credibility.

expected to cause the alleged symptoms; however, plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment (Tr. 29). As noted by the ALJ, the record contains affirmative evidence of a motivation for secondary gain (Tr. 29, 241). Grant County Mental Health progress notes dated July 21, 2003, indicate that plaintiff reported working with an elderly man but had no real desire to look for full time employment, knowing he would have 50 percent of his earnings taken for past child support. He reported having jumped from job to job in the past to avoid having to pay the child support and having lived off the system for so long he had no real need to seek employment (Tr. 29, 241). The ALJ also noted there was very little in the record to support plaintiff's subjective complaints of mental impairments and that there were also some inconsistencies in plaintiff's reporting during his evaluations (Tr. 29). The ALJ further indicated that objective medical evidence did not support the level of physical limitation plaintiff claimed, and plaintiff's apparent drug-seeking behavior detracted from his allegations (Tr. 30). There is also record evidence of plaintiff's excuses for not following through with treatment (i.e., fear of needles and lack of means to travel to an appointment) (Tr. 30). The ALJ stated that if plaintiff's health problems were not severe enough to motivate him to follow through with treatment, it is difficult to accept his assertion that they are disabling (Tr. 30).

At step four, the ALJ found that plaintiff was unable to perform any of his past relevant work (Tr. 32). However, at step

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

five, based on the vocational expert testimony and plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that exist in significant numbers in the national economy that plaintiff could perform, including the jobs of agriculture sorter, peeled potato inspector and cannery worker (Tr. 32-33). Accordingly, the ALJ concluded that plaintiff was not disabled as defined by the Social Security Act from February 10, 2003, through the date of his decision, October 9, 2009 (Tr. 33).

**ISSUES**

Plaintiff alleges the ALJ erred as follows:

1.   By finding plaintiff did not have any "severe" physical impairments;

2.   By improperly rejecting the opinions of plaintiff's treating and examining medical providers; and

3.   By failing to include all of plaintiff's limitations in the hypothetical presented to the vocational expert.

(ECF No. 14 at 12-20).

**DISCUSSION**

**A.  Medical Evidence**

Plaintiff's main contention is that the ALJ improperly rejected the opinions of his treating and examining medical providers. (ECF No. 14 at 16-19). Plaintiff specifically argues that the opinions of Tiffany Friesen, M.D., and Mahlon Dalley, Ph.D., were rejected on impermissible grounds.

The courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater,* 81 F.3d 821, 839 (9th Cir. 1996). A treating

physician's opinion is given special weight because of her familiarity with the claimant and his physical condition. *Fair v. Bowen,* 885 F.2d 597, 604-605 (9th Cir. 1989). Thus, more weight is given to a treating physician than an examining physician. *Lester*, 81 F.3d at 830. However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).

The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830. Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion. *Andrews*, 53 F.3d at 1042-1043. Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician only when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

**1. Dr. Friesen**

Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Friesen, plaintiff's long-time treating physician. (ECF

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

No. 14 at 16-18).  Defendant responds that the ALJ's evaluation of Dr. Friesen's opinions was reasonable.  (ECF No. 17 at 11-13).

Dr. Friesen repeatedly opined that plaintiff was limited to sedentary exertion level work with no pushing, pulling, lifting or carrying more than 10 pounds, no bending, crouching, kneeling or stooping, and no repetitive hand or arm movements (Tr. 283-286, 287-290, 361-364, 365-368, 370-373).

Dr. Friesen's opinions, however, are inconsistent with the objective medical evidence of record.  As noted by the ALJ, no objective medical findings in the record support limitations due to plaintiff's alleged low back, wrist or hand pain.  Testing refuted any nerve damage, severe degenerative disc disease, carpal tunnel syndrome or any rheumatological impairment (Tr. 23, 30).

X-rays of the thoracic spine taken on November 8, 2005 were negative (Tr. 23, 468).  An MRI scan of plaintiff's lumbar spine on November 21, 2005 was "completely normal" (Tr. 23, 374).  Bilateral hand x-rays taken on December 9, 2005 demonstrated no significant abnormality and only an old healed fracture of the left 5th metacarpal (Tr. 24, 467).  Physical therapist Randy C. Bruce, MSPT, indicated on February 10, 2006, that plaintiff was being discharged from physical therapy and "on his last visit was having no pain" (Tr. 23, 293).  Plaintiff was referred to Eric P. Thorson, M.D., for an orthopedic evaluation on March 31, 2006.  Dr. Thorson indicated that x-rays of the hands and wrists showed no evidence of abnormality (Tr. 24, 329).  He noted that plaintiff's subjective complaints were "somewhat out of proportion to the findings on clinical exam" (Tr. 329).  Nerve conduction studies completed in May 2006 demonstrated borderline abnormal

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

with right median sensory amplitude low without an abnormal latency across the wrist.  It is noted that this finding did not clinically correlate with the examination and there was no evidence of carpal tunnel syndrome (Tr. 23, 470).  Additional nerve conduction studies completed on July 26, 2006 had findings against a significant carpal tunnel syndrome or ulnar neuropathy to account for plaintiff's complaints of his hands (Tr. 24, 322-323).

On July 26, 2006, neurologist Richard A. Dickson, M.D., examined plaintiff and indicated that plaintiff presented with multiple complaints in regard to his feet, hands, arms and legs, and back, "none of which are associated with definitive neurologic signs" (Tr. 24, 325).  He opined that it would be atypical for plaintiff to have carpal tunnel syndrome.  (Tr. 325).  Also on July 26, 2006, rheumatologist J. Richard Newton, M.D., examined plaintiff and found "no evidence of a peripheral neuropathy or an immune mediated inflammatory disease" (Tr. 24, 327).  He opined that surgery would not be helpful for plaintiff's feet.  (Tr. 327).  X-rays taken on September 15, 2006, demonstrated only mild degenerative changes at L2-3, L3-4 and L4-5 (Tr. 23, 466).  Lumber spine x-rays taken on April 7, 2008, demonstrated only minor hypertrophic degenerative change.  Otherwise, negative lumbosacral spine series with bending films (Tr. 23-24, 592).  Bilateral hand x-rays were taken on April 7, 2008, and these were negative (Tr. 24, 593).  On October 16, 2008, plaintiff was evaluated by James R. Irwin, M.D., with regard to a mass on plaintiff's right hand (Tr. 24, 719).  Dr. Irwin's examination was unremarkable and no further treatment was recommended.  *Id*.  On October 21, 2008,

plaintiff again underwent nerve conduction studies of both median and right ulnar nerves and this was negative for carpal tunnel syndrome.  The results indicated left and right median nerve conduction is within normal limits and right ulnar nerve conduction is within normal limits (Tr. 24, 711).  On October 31, 2008, George Monlux, M.D., reported there was no evidence of carpal tunnel syndrome by nerve conduction (Tr. 24-25, 711).  On December 4, 2008, plaintiff was evaluated by J. Chad Byrd, M.D., due to plaintiff's complaints of diffuse pain (Tr. 25, 642).  Dr. Byrd indicated he did not see evidence of an inflammatory arthritis (Tr. 642).

The ALJ indicated he gave great weight to the opinions of Drs. Newton, Dickson, Monlux, Thorson, Irwin and Byrd as these physicians are specialists and found no objective evidence to substantiate plaintiff's complaints of carpal tunnel syndrome, peripheral neuropathy, radiculopathy or neurological deficits (Tr. 30-31).  The opinions of these doctors is also consistent with the opinion of state agency reviewing physician Morris Fuller, M.D.[2] (Tr. 491-498, 528).  The foregoing medical evidence does not support the level of physical limitation assessed by Dr. Friesen.

The ALJ additionally gave little weight to Dr. Friesen because "she apparently relied heavily on the subjective report of symptoms and limitations provided by [plaintiff], and seemed to uncritically accept as true most, if not all, of what [plaintiff]

_____

[2]On February 13, 2007, and April 18, 2007, Dr. Fuller opined that plaintiff could frequently lift and/or carry 25 pounds, occasionally lift and/or carry 50 pounds, stand and/or walk and sit about 6 hours in an 8-hour workday and was unlimited in his ability to push and/or pull (Tr. 492).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

reported" (Tr. 31). As indicated above, the ALJ determined that Plaintiff was not fully credible, and plaintiff does not contest the ALJ's credibility determination. A physician's opinion may be disregarded when it is premised on the properly rejected subjective complaints of a plaintiff. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The undersigned finds that the ALJ provided specific, legitimate reasons supported by substantial evidence for giving little weight to the opinions of Dr. Friesen. The ALJ's physical RFC determination is supported by the reports of Drs. Newton, Dickson, Monlux, Thorson, Irwin, Byrd and Fuller as well as the record evidence of medical testing results.

**2. Dr. Dalley**

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Dalley's opinions. (ECF No. 14 at 18-19). Defendant responds that the ALJ did not, in fact reject Dr. Dalley's opinions. (ECF No. 17 at 13-15). Rather, the ALJ's assessment of plaintiff's mental RFC is consistent with Dr. Dalley's assessments.

On April 24, 2003, plaintiff underwent a psychological evaluation with Behavioral Assessments and Counseling (Brooke Sjostrom, M.S., adopted by Dr. Dalley) (Tr. 199-206). At that time, plaintiff was diagnosed with alcohol dependence, early full remission; cocaine dependence, early full remission; and an antisocial personality disorder (Tr. 201). Plaintiff was given a global assessment of functioning (GAF) score of 70 (Tr. 201), and no marked or severe functional limitations were assessed (Tr. 205). Plaintiff reported he was physically able to do anything

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

but mentally felt depressed and lacked a desire to work (Tr. 19, 199).  It was opined that plaintiff did not exhibit a psychological condition that would interfere with his ability to keep a job (Tr. 19, 201).

On May 11, 2005, plaintiff underwent another psychological evaluation with Behavioral Assessments and Counseling (Abigail Osborne, M.S., adopted by Dr. Dalley) (Tr. 275-282).  It was noted that plaintiff had participated in another inpatient chemical dependency treatment program in March 2004 and was in an aftercare outpatient program at that time (Tr. 20, 275).  Plaintiff was given the same diagnoses, but his GAF score was lowered to 53[3] (Tr. 277).  Again, no marked or severe functional limitations were assessed (Tr. 281).  It was noted that it was difficult to determine if plaintiff's depressive symptoms were independent of the effect of his substance abuse (Tr. 20, 278).  It was again opined that plaintiff did not exhibit a psychological disability that would prevent him from working (Tr. 20, 278).

On June 15, 2006, plaintiff was again evaluated by Behavioral Assessments and Counseling (Ms. Osborne, adopted by Dr. Dalley) (Tr. 300-308).  At that time, plaintiff was diagnosed with an adjustment disorder with depressed mood; alcohol dependence, sustained full remission; cocaine dependence, sustained full remission; and an antisocial personality disorder (by history) (Tr. 302).  His GAF score had risen to 56, indicative of moderate symptoms or moderate difficulty (Tr. 302), yet the check-box form

---

[3]A GAF of 60-51 reflects: Moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *See* Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

accompanying the report indicated plaintiff would have marked

limitations in his ability to relate appropriately to co-workers

and supervisors and to respond appropriately to and tolerate the

pressures and expectations of a normal work setting (Tr. 307).  A

check-box form, however, is entitled to little weight.  *Crane v.*

*Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's

rejection of a check-off report that did not contain an

explanation of the bases for the conclusions made was

permissible).  Here, not only does the check-box form of these

medical providers fail to contain an explanation for the

conclusions reached, but it is also inconsistent with the

narrative report of the medical providers.  In any event, the form

indicated that the symptoms were expected to last a maximum of

only 6 months[4] (Tr. 308).  The medical professionals opined that

once plaintiff's symptoms had stabilized, he may be able to return

to work (Tr. 303).

In summation, Dr. Dalley's first two assessments concluded

that plaintiff did not exhibit a psychological disability that

would prevent him from working.  Dr. Dalley's final assessment,

although noting marked impairments with interacting with

supervisors and others on the check-box form, did not mention such

severe impairments in the narrative report and, in any event,

indicated the symptoms would last a maximum of only 6 months and

he would then be able to work.

Contrary to plaintiff's argument, Dr. Dalley's assessments

are not inconsistent with the ALJ's mental RFC determination.  In

---

[4]These limitations would thus not meet the duration
requirements of the Act (one year).  42 U.S.C. § 1382c(a)(3)(A).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

this case, the ALJ determined plaintiff could perform light work, but should avoid, among other things, having intense interaction with others and coworkers (Tr. 28).  The ALJ further determined that plaintiff is capable of only occasional supervisory contact and must receive clear expectations and structure from supervisors and should work independently (Tr. 28).  This mental RFC determination reflects significant limitations in plaintiff's ability to tolerate interaction with supervisors, coworkers and the public and is therefore not inconsistent with the reports of Dr. Dalley.  The ALJ's mental RFC determination is in accord with the weight of the record evidence.

**B.  Severe Impairments**

Plaintiff also contends that the ALJ should have determined that he suffered from severe physical impairments.  (ECF No. 14 at 15-16).  Defendant responds that plaintiff has failed to meet his step two burden in this regard.  (ECF No. 17 at 15-16).  Defendant argues that the objective medical evidence shows no more than minimal physical limitations in this case.  *Id*.  The undersigned agrees.

Plaintiff has the burden of proving that he has a severe impairment at step two of the sequential evaluation process.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 423(d)(1)(A), 416.912.  In order to meet this burden, plaintiff must furnish medical and other evidence that shows that he has a severe impairment.  20 C.F.R. § 416.912(a).  The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c), provide that an impairment is severe if it significantly limits one's ability to perform basic work activities.  An impairment is considered non-severe if it "does

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521, 416.921.  "Basic work activities" are defined as the abilities and aptitudes necessary to do most jobs.  20 C.F.R. §§ 404.1521(b), 416.921(b).

Step two is "a de minimis screening device [used] to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when this conclusion is "clearly established by medical evidence."  S.S.R. 85-28; *see, Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005).  Applying the normal standard of review to the requirements of step two, the Court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that plaintiff did not have a medically severe impairment.  *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."); *Webb*, 433 F.3d at 687.

Here, the ALJ concluded there was no objective medical findings to support plaintiff's allegations of severe low back pain, wrist and hand pain, degenerative disc disease, carpal tunnel syndrome or any rheumatological impairment (Tr. 23).  As indicated in Section A, testing refuted any nerve damage, severe degenerative disc disease, carpal tunnel syndrome or any rheumatological impairment.  *See supra*.  There is simply no objective evidence to substantiate plaintiff's complaints of carpal tunnel syndrome, peripheral neuropathy, radiculopathy or

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

neurological deficits.  Accordingly, the ALJ did not err by finding no severe physical impairments in this regard.

With respect to plaintiff's complaints of foot pain, the ALJ held that while plaintiff did undergo surgery for the alleged impairment, it is offset by the fact that the record reflects that the surgery was generally successful in relieving symptoms and there was no continuous 12-month period where this impairment would have prevented plaintiff from performing substantial gainful work activity (Tr. 25).  The ALJ thus determined that plaintiff's left foot neuroma was also a non-severe impairment (Tr. 25-26). Plaintiff has failed to demonstrate otherwise.  The ALJ's determination regarding plaintiff's foot pain is supported by the substantial weight of the record evidence.

The undersigned finds that the ALJ did not err at step two of the sequential evaluation process in this case.

**C.   Step Five**

Because the undersigned finds that the ALJ's evaluation of the evidence is appropriate and the ALJ's RFC determination is supported by substantial evidence, plaintiff's argument that the hypothetical presented to the vocational expert was incomplete is without merit.  The ALJ's step five determination is also proper.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence.  Accordingly,

**IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (**ECF No. 16**) is **GRANTED.**

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

    2. Plaintiff's Motion for Summary Judgment (**ECF No. 13**) is **DENIED.**

    **IT IS SO ORDERED.**  The District Court Executive is directed to file this Order, provide copies to the parties, enter judgment in favor of Defendant, and **CLOSE** this file.

    **DATED** this 13th day of August, 2012

                              S/ James P. Hutton
                         JAMES P. HUTTON
                         UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 20